IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>JOHN J. FLATLEY d/b/a JOHN J. FLATLEY )<br>COMPANY and LUKE PAGE, )<br><br>Defendants. )<br>_____) | Civil Action No. |

## COMPLAINT OF THE UNITED STATES

The UNITED STATES OF AMERICA, by its attorneys, alleges as follows:

## NATURE OF ACTION

1.     This is an action brought by the United States to enforce Title VIII of the Civil
Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601,
*et seq*. ("Fair Housing Act").

2.     The United States brings this action for injunctive relief and monetary damages on
behalf of Natasha Grant and Farhad Pourkamali Anaraki pursuant to the Fair Housing Act, 42
U.S.C. § 3612(o).

3.     The United States alleges that Defendants violated 42 U.S.C. § 3604(f)(2) and
(f)(3)(B) by discriminating in the rental of a dwelling and in the terms and conditions of tenancy
because of a tenant's disability by refusing to make reasonable accommodations in rules, policies,
practices or services when such accommodations may be necessary to afford that person equal
opportunity to enjoy a dwelling.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C.

§ 3612(o).

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C.

§ 3612(o).

## PARTIES

6.     Plaintiff is the United States of America.

7.     At all times relevant to this Complaint, Defendant John J. Flatley d/b/a John J.

Flatley Company ("Flatley") was the owner of Tara Heights Apartments, the "subject property,"

located at 5-35 Digital Drive, Nashua, New Hampshire 03062-4480.  Flatley's principal business

address is 45 Dan Road, Suite 320, Canton, Massachusetts 02021.

8.     At all times relevant to this Complaint, Defendant Luke Page ("Mr. Page") was the

Property Manager for the subject property and employed by the Flatley Company.  His duties

include making decisions regarding reasonable accommodation requests at the subject property.

## FACTS

9.     Complainants Grant and Anaraki ("Complainants") are a married couple, residing

together in Nashua, New Hampshire.

10.     Natasha Grant is a person with a disability[1]  within the meaning of 42 U.S.C.

§ 3602(h).  She has, and in 2016 was diagnosed with, anxiety and depression, which have

---

[1] The Fair Housing Act uses the term "handicap," or "handicapped," which are considered antiquated terms. This Complaint uses the terms "disability" or "disabled," instead. Those terms have the same meaning as the term "handicap" or "handicapped," as defined in the Fair Housing Act.

substantially limited several of her major life activities, including working, socializing, and sleeping, and for which she received medical treatment.

11.     In 2014, while living in Colorado with her parents, Ms. Grant acquired a Saint Bernard assistance dog, "Molly," which she soon found helped to alleviate the symptoms of her disabilities.  In 2016, Ms. Grant's psychologist and psychiatrist diagnosed her with anxiety disorder and depression disorder.  Molly assisted Ms. Grant in coping with her depression and anxiety in her parents' home, where she lived until 2017 and then visited on weekends until May 2019 while attending nursing school in Colorado.

12.     In May 2019, Ms. Grant married Complainant Anaraki and decided to move from Colorado to New Hampshire because Mr. Anaraki had obtained a job in Massachusetts.

13.     On May 15, 2019, Complainants signed a one-year lease with Defendant Flatley to live at the subject property at 30 Digital Drive, Unit #30-304.

14.     Section 8 (Animals) of Defendant Flatley's lease states as follows:

> No dogs, cats, birds or other animals may be kept in the Apartment or allowed anywhere else in the Building or on the Owner's property.  Your signature on this lease will assure the Owner that you have no pets and will not have any pets in your residence.  No pet sitting or visiting pets are allowed in or on the rental property at any time.  If a pet is found to be in your residence a fine will be charged at the rate of $250.00 per month per pet and this will be considered a default of your lease and grounds for eviction.

15.     Notably, however, Defendant Flatley's lease further provides that:

> The Owner acknowledges its rights and obligations under the Fair Housing Amendments Act of 1988 to the extent that the parties may agree to make reasonable accommodation to waive certain requirements of this section.

16.     The lease also included a No Pet Rider, which states in relevant part:

> This statement is considered an extension of your unit Rental Agreement. Your signature on this document will assure the Owner that you have no pets and will not have any pets in your residence. No pet sitting or visiting pets are allowed in or on the rental property at this time. If a pet is found to be in your residence a fine will be

charged at the rate of $250.00 per month per pet and this will be considered a default of your lease and grounds for eviction.

17.     In early June 2019, Complainants moved into Unit #30-304 at the subject property. Ms. Grant left Molly with her parents in Colorado because the lease prohibited dogs at the subject property, and she and Mr. Anaraki were unable to find other housing within their means that allowed dogs.

18.     From June to August 2019, Ms. Grant studied for the nursing boards to become a licensed nurse in the State of New Hampshire. This was a stressful time for Ms. Grant to be apart from her family and dog Molly.  Ms. Grant flew to her parents' home in Colorado to spend time with her family and Molly in July 2019.

19.     In October 2019, Ms. Grant began a job as a registered nurse at a hospital in Nashua.

20.     Ms. Grant's new job in a new state, all while living at the subject property without Molly, increased Ms. Grant's anxiety and depression symptoms.  Her medication alone was insufficient without Molly's help to alleviate the symptoms of her disability.

21.     In November 2019 and again in December 2019, Ms. Grant flew to her parents' home in Colorado to spend time with her family and Molly.

22.     In late December 2019, after returning to the subject property from visiting her family and Molly in Colorado for the holidays, Ms. Grant decided to begin the process of bringing Molly to live with her to provide her emotional assistance.

23.     On January 6, 2020, Ms. Grant emailed Flatley employee Kimberly Bellemore, the Assistant Community Manager for the subject property, to request a reasonable accommodation for her disability.  The email stated in relevant part: "I am writing to request reasonable accommodation for my disability under the Fair Housing Amendment Act.  I am requesting an

assistance animal to alleviate the symptoms of my disability.  What documentation does your office need from me?"

24.     Later that day, Ms. Bellemore replied to Ms. Grant's  email, stating: "The office will need a physician's letter for the prescription of a service animal.  You can bring it into the office or email it to myself or the Property Manager, Luke Page, for review."

25.     On January 13, 2020, Ms. Grant emailed Brittany Szczepanski, P.A. ("Ms. Szczepanski"), a physician's assistant at her doctor's office, to request a letter to provide to Flatley in support of her reasonable accommodation request.

26.     On January 17, 2020, Ms. Grant attended an appointment at her doctor's office, where she was seen by Ms. Szczepanski.  At the end of the appointment, during which Ms. Grant explained how Molly alleviated her anxiety and depression symptoms, Ms. Szczepanski provided Ms. Grant with a letter stating the following:

> Natasha Grant is a patient of mine at Harvard Vanguard Medical Associates. Due to a medical condition causing certain limitations, I believe that Natasha would greatly benefit from an assistive animal for emotional support. She meets the definition of disabled and such an accommodation would improve her ability to lead a better life. I would be more than willing to answer any questions that you have regarding my recommendation that Natasha Grant should have an emotional support animal. Should you have any further questions, please do not hesitate to get in touch with me.

27.     On January 21, 2020, Ms. Grant emailed Ms. Bellemore, attaching a copy of the January 17, 2020 letter from Ms. Szczepanski.

28.     On or about January 21 or 22, 2020, Ms. Bellemore checked with Defendant Page, the property manager, concerning Ms. Grant's request.  On January 22, 2020, Ms. Bellemore sent a reply email to Ms. Grant, stating that the property manager had reviewed Ms. Grant's letter from the medical provider and that Flatley Company approved her to keep an emotional support animal

in her unit.  However, the email stated that while Flatley Company's "corporate guidelines for emotional support animals" included "most domestic pets," they excluded dogs.

29.     That same day, Ms. Grant responded to Ms. Bellemore that she was in fact requesting a dog as an emotional support animal and that she was entitled to do so under the Fair Housing Act. She attached a link to U.S. Department of Housing and Urban Development ("HUD") website pages, from which she provided quotes, including that "dogs are the most common type of assistance animal."

30.     Ms. Bellemore forwarded the email to Defendant Page, the property manager, and notified him that Ms. Grant was "unhappy that she can't have a dog."  She asked Mr. Page if there was "anything" to "provide to [Ms. Grant] as to why we don't allow them."  In response, Mr. Page spoke with Ms. Bellemore and confirmed that Flatley Company would not allow a tenant to keep a dog as an assistance animal.

31.     After receiving no response, Ms. Grant followed up several days later with another email asking Ms. Bellemore to confirm receipt of Ms. Grant's January 22 email.  Subsequently, Ms. Grant went in person to inquire about her request.  Ms. Bellemore informed her that she had forwarded the email request to "corporate" and that they denied Ms. Grant's accommodation request to have a dog as an assistance animal.

32.     On or about June 2, 2020, Complainants filed a complaint with HUD alleging that they were being discriminated against on the basis of Ms. Grant's disability.

33.     During HUD's investigation into the housing discrimination complaint, Flatley Company and its employees advised HUD that they do not have a written policy in place governing assistance animals.  Defendants further advised HUD that Defendant Flatley allows trained service

dogs but believes that dogs do not qualify as "emotional support animals," and therefore allows only other assistance animals.

34.     Defendants' denial of Complainants' request for a reasonable accommodation was based on a generalized impression of dogs and did not involve an individualized assessment of Ms. Grant's emotional support animal.

35.     As a result of Defendants' actions, Complainants have searched for and located a new apartment where they can bring Molly.  They gave the Defendants notice on March 23, 2021 of their intent to leave the subject property on May 18, 2021.

36.     As a result of Defendants' actions, Complainants have suffered actual damages, including but not limited to physical and emotional distress, inconvenience, and frustration, and have concluded that they have to move out of the subject property.

## PROCEDURAL BACKGROUND

37.     As required by the Fair Housing Act, 42 U.S.C. § 3610(a) and (b), the Secretary of HUD investigated the complaint made by Complainants, attempted conciliation without success, and prepared a final investigative report.

38.     Based on the information gathered in the investigation, the Secretary determined that reasonable cause exists to believe that illegal discriminatory housing practices occurred.  On March 8, 2021, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to 42 U.S.C. § 3610(g), charging the Defendants with discrimination under the Fair Housing Act.

39.     On March 12, 2021, Complainant Grant elected to have the claims asserted in HUD's Charge of Discrimination resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a). Accordingly, on March 12, 2021, a HUD Administrative Law Judge issued a notice of election and

terminated administrative proceedings.  Following the notice of election, the Secretary of HUD

authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

    40.    The United States now timely files this Complaint pursuant to the Fair Housing Act,

42 U.S.C. § 3612(o).

## FAIR HOUSING ACT VIOLATIONS PURSUANT TO
## 42 U.S.C. § 3604(f)(2), (3)(B)

    41.    The United States repeats and realleges the preceding paragraphs.

    42.    By the actions referred to in the preceding paragraphs, Defendants have:

    a.   Discriminated in the terms, conditions or privileges of the rental of a dwelling

        on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2); and

    b.   Refused to make reasonable accommodations in rules, policies, practices or

        services, when such accommodations may be necessary to afford a person

        with a disability an equal opportunity to use and enjoy a dwelling, in violation

        of 42 U.S.C. § 3604(f)(3)(B).

    43.    The Complainants are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and

have suffered injuries as a result of Defendants' actions.

    44.    Defendants' discriminatory actions were intentional, willful, and taken in disregard

of the rights of the Complainants.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court:

    1.    Determine and declare that the discriminatory housing practices of Defendants

Flatley Company and Luke Page as set forth above violate the Fair Housing Act;

8

2.      Enjoin and restrain Defendants Flatley Company and Luke Page, their officers, employees, agents, successors, and all other persons or corporations in active concert or participation with them, from further violations of the Act, including from:

   A.      discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2); and

   B.      refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

3.      Order Defendants Flatley Company and Luke Page to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of disability;

4.      Award monetary damages to Complainants pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

5.      Order such additional relief as the interests of justice require.

**A Jury Trial is Requested.**

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

Dated: April 9, 2021

/s/ Raphael Katz
Raphael Katz
Assistant United States Attorney
NY Bar No. 4371688
United States Attorney's Office
District of New Hampshire
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
Raphael.katz@usdoj.gov